UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

David Gevas,
    Plaintiff,

vs.                                                                                  08-1379

C. McLaughlin, et al.,
    Defendants

ORDER

      On February 5, 2010, the plaintiff filed a motion [110] to proceed on his claims of retaliation. In response, after reviewing the plaintiff's complaint, on February 18, 2010, the court directed the plaintiff to advise the court which defendant(s) retaliated against him, the date of the retaliation, and the reason for the retaliation and what protective activity the plaintiff was exercising and the date he exercised the protective activity. On February 19, 2010, the plaintiff filed a motion to proceed on due process and retaliation claims [112]. After the defendants failed to respond to the motion, the court directed the defendants to file a response. The defendants filed their response [133] on August 4, 2010. In the plaintiff's motion [112], he asked the court to proceed on additional claims of due process violation and retaliation. The court did not include these claims in the court's March 3, 2009 merit review of the plaintiff's complaint. The court only allowed the plaintiff to proceed on his failure to protect claim. In support of his request to add a due process claim to his case, the plaintiff points to the court's June 29, 2009 order where the court denied the plaintiff's motion for appointment of counsel and inadvertently stated the complaint was found to state a claim for an alleged violation to his due process rights. Following this statement, the plaintiff asserts that he diligently researched to understand the violation of his due process rights and made requests through discovery. He states that through discovery he received a ruling on the Adjustment Committee Hearing Procedures. However, because the plaintiff appealed the Adjustment Committee's decision prior to filing his complaint, the court notes that the plaintiff received this information outside of discovery, before he filed his complaint.

      On August 13, 2010, the court entered an order regarding the plaintiff's motion to proceed on due process and retaliation claims [112], his response [115] to the February 18, 2010 order, and the defendants' response [133] to the plaintiff's motion. In the court's order, after reviewing the plaintiff's response, the court wrote that [t]he plaintiff alleged generally that Christopher McLaughlin, Nicholas Ryan, David Unsworth, Duane Price, Richard Hall, Cornealious Sanders, Michael Chapin, Steven Wright and Gerardo Acevedo retaliated against him. The court spent four to five hours reviewing the plaintiff's response [115] and his original complaint to which he repeatedly pointed. As a result, the court advised the plaintiff that the court and the defendants, should not have to spend four or more hours discerning the plaintiff's

1

claims of retaliation and further advised the plaintiff that the court would not spend any more of its time on the plaintiff's clarification because the court had come to realize it was spinning its wheels and moving no closer to any determination on the plaintiff's claims. A review of the plaintiff's total response revealed that it was impossible to determine which retaliation claims are against which defendant, the date of the retaliation, the defendant's specific retaliatory act, what protected activity the plaintiff was exercising and when he exercised that protective activity. In the court's order [135] ruling on the plaintiff's motion [112], the court found that the plaintiff had failed to state a claim for a due process violation, regardless of the court's inadvertent statement in the June 29, 2009 order. As to his claims of retaliation, the plaintiff was allowed one more opportunity to state any claims of retaliation against the defendants.

On September 2, 2010, the plaintiff filed a motion for leave to proceed on claim of retaliation [140] and defendants filed a response [142] on September 14, 2010. On September 23, 2010, the court denied the plaintiff's motion because he had failed to comply with the court's August 13, 2010 order. On October 22, 2010, the plaintiff filed a motion for clarification and reconsideration of the court's September 23, 2010 order. As the plaintiff is proceeding pro se and hoping to clarify the plaintiff's claims of retaliation, on November 1, 2010, the court directed the plaintiff to file a copy of all of the grievance materials, he referred to in certain paragraphs of his "Claims of Retaliation" attached to his motion [140]. On November 19, 2010, the plaintiff filed a motion for leave to amend his complaint. The plaintiff filed the grievance materials [153] on December 6, 2010. Now, although the court said it would not spend anymore time trying to glean the plaintiff's retaliation claim from his complaint [1] and other documents filed in this case, the court has spent two days doing what it said it would not do. The court has reviewed the plaintiff's complaint [1] and attachments, his "Claims of Retaliation" attached to his motion [140] and the grievance and disciplinary materials [153].

The court now considers whether the plaintiff may proceed on his retaliation claims and also revisits his already dismissed claims of due process violations. The plaintiff claims that certain of the defendants retaliated against him in violation of his First Amendment rights. Specifically, he alleges the defendants violated his First Amendment rights after writing a letter to Attorney General Lisa Madigan regarding a correction officer's assault of another inmate and because he filed grievances. The plaintiff claims that in retaliation, the defendants issued false disciplinary reports against him in violation of his First Amendment rights.

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-1141 (7th Cir. 1984), the Seventh Circuit stated that allegations of falsified disciplinary reports do not state a claim, provided that the required procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), are met. "Procedural due process protections are the major means of protection prisoners have from arbitrary government actions . . ." *Id.* at 141; *see also McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999. However, *see Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994)("Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right."). Acts

which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). "This is so even if the adverse action does not independently violate the Constitution."

A claim for retaliation is stated when a prisoner sets forth "a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000)(*quoting Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)). Retaliation for filing grievances can state a claim under § 1983. *See Johnson v. Stovall*, 233 F.3d 486, 489 (7th cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). *Babcock v. White*, 102 F.3d 267, 275 (7th Cir.1996)("The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, ..., as well as the right to be free from retaliation for exercising this right.")(citation omitted); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir.1999)("Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court.... Thus, a prison official may not retaliate against a prisoner because that prisoner filed a grievance)(retaliation for grievance about losing prison job stated constitutional claim). *See also Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (assuming on motion to dismiss that prison grievances may be protected by speech or petition clauses of the First Amendment and right to access the courts). The plaintiff's burden is high. He of course must establish that his protected conduct was a motivating factor behind the disciplinary reports, but that will not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive. *See Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). It will not suffice for the plaintiff to show the defendants's desire to retaliate against him played a substantial part in issuing the disciplinary reports.

The plaintiff states that on February 12, 2008, he wrote a grievance against Correctional Officer Ames, not a defendant, for assaulting an inmate named Jarvis. The incident was investigated by Internal Affairs at Hill Correctional Center. However Internal Affairs never questioned the plaintiff regarding the incident. The plaintiff also claims that on March 29, 2008, he filed an emergency grievance with the warden, Acevedo[1] regarding his cell assignment and being placed into a cell with a "malicious security threat group individual" (hereinafter STGI). Plaintiff claims this cellmate assignment exposed him to a substantially high risk of serious harm. The plaintiff did not attach a copy of his March 29, 2008 grievance to his complaint. However, the court managed to glean some facts from statements made in his complaint and in an April 16, 2008 grievance. In the April 16, 2008 grievance, the plaintiff discusses that he had written a March 29, 2008 grievance and did not receive a response. He said in that grievance, he complained about his cellmate, John Taylor, a Vice Lord who was acting maliciously towards

---

[1]The defendant, Acevedo was terminated as a defendant in the court's December 9, 2010 order.

him. Plaintiff also stated that on March 30, 2008, Internal Affairs advised the plaintiff that Taylor was sending letters to Internal Affairs indicating he wanted to harm the plaintiff. Internal Affairs moved John Taylor to another location. The plaintiff does not allege that John Taylor harmed him. See plaintiff's April 16, 2008 grievance attached to his complaint.

The plaintiff claims that on March 30, 2008, the defendant, McLaughlin of Internal Affairs threatened him with a year in disciplinary segregation for filing his grievance. The plaintiff claims the threat was to stop him from filing further grievances, but he refused. McLaughlin then "threatened" the plaintiff and told him he would be celled with "malicious security threat group individuals and exposed to a high risk of serious injury." See the plaintiff's "Claims of Retaliation," par. 8 [140]. In his complaint, the plaintiff claims that the next day, on March 31, 2008, McLaughlin, in retaliation [for filing grievances], assigned Inmate Lawson, a known Gangster Disciple, as the plaintiff's cellmate. Two weeks later, the plaintiff filed the April 16, 2008 emergency grievance. In that grievance he, as discussed above, made statements regarding his March 29, 2008 grievance. The plaintiff stated he should not be housed with a STGI. Plaintiff did not make any claims that Lawson had harmed him or was acting maliciously towards him. Further, the plaintiff did not mention McLaughlin and he did not complain about McLaughlin's alleged threats or alleged retaliatory conduct. Plaintiff did not complain that on March 30, 2008, McLaughlin threatened him with a year in disciplinary segregation for filing a grievance or that he would assign STGIs as plaintiff's cellmates. At this point, the plaintiff had "knowledge" that McLaughlin retaliated against him for filing grievances. Nevertheless, he failed to grieve the alleged conduct of McLaughlin. However, the plaintiff filed another grievance on June 5, 2008 wherein he complained about the alleged retaliation.

The plaintiff claims that on May 8, 2008, he filed his second grievance with the grievance officer. The plaintiff does not attach a copy of this grievance. The plaintiff claims that nine days after he filed his second grievance with the grievance officer, he was intentionally and in retaliation for filing grievances and for causing the investigation of correctional officer Ames's assault on Inmate Jarvis, set up to be attacked by Inmate Adkins, a STGI. In his December 16, 2010 response [153] to court's November 1, 2010 order, the plaintiff asserts that it was McLaughlin that retaliated and set him up to be attacked by Inmate Adkins. The plaintiff also asserts that the defendant, Steele also retaliated, but the court notes that the plaintiff recently, November 19, 2010 [151], filed a motion to amend his complaint to bring this claim against Steele. Because the deadline to amend the motion had already passed, the court denied the motion on December 7, 2010. Therefore, the plaintiff cannot proceed on a claim of retaliation against Defendant Steel.

The plaintiff claims that after the assault and investigation, between May 29, 2008 and June 3, 2008, the defendants Price, McLaughlin and Unsworth met to concoct a scheme to issue a false and retaliatory disciplinary report and they recruited the defendant, Bryan to give false statements for the disciplinary report. The plaintiff claims that on June 3, 2008, Unsworth wrote a false and retaliatory disciplinary report against him to stop and punish him for exercising his

4

First Amendment right to file grievances and to write letters to the Attorney General. In the disciplinary report, the plaintiff was charged with: 1) assaulting any person; 2) damage or misuse of property; and 3) fighting. The plaintiff also claims Unsworth's action was to cause the plaintiff to be transferred from Hill Correctional Center in order to void a settlement agreement, reached in Case No. 06-cv-4833, Northern District of Illinois, to transfer him to Hill Correctional Center.

The plaintiff claims that on June 5, 2008, he received from the defendant, Hall a false and retaliatory disciplinary report wherein the plaintiff was charged with failure to submit to a "medical or forensic test." The plaintiff admits that on June 5, 2008, while on a hunger strike, a nurse offered to take his blood pressure, but he declined. Yet, he claims the disciplinary ticket was false in its entirety because failure to submit to medical or forensic test is for a court ordered medical or forensic test. However, the court notes the charge was for the plaintiff's failure to submit to a medical test -- vitals -- which Hall noted is required when an inmate is on a hunger strike. In his complaint, the plaintiff admits that he declined to let the nurse take his blood pressure. Thus, the disciplinary report was not a false report. Further, the plaintiff has not alleged that Hall retaliated against him because he was exercising a constitutional right. The plaintiff claims he had a "right" to refuse the test. However, his "right" to decline the "offer" of a blood pressure check while on hunger strike is not a federal constitutional right. He was found guilty of the charges. He alleges that he was punished with three months C-Grade, three months segregation and a retaliatory transfer to void the agreement reached in his lawsuit. Defendant Hall's issuing the disciplinary ticket was not motivated by the plaintiff's exercise of any constitutionally protected right. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) ("Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right."). Again, in this instant, the plaintiff was not exercising a right that came with federal constitutional protections. Further, it was not Hall who decided what punishment the plaintiff would receive. That decision was made by the defendants, Chapin and Sanders. The plaintiff may not proceed on a claim of retaliation against Hall. The plaintiff has made no other allegations against Hall. Therefore, Hall is dismissed as a defendant in this lawsuit.

In his "Claims of Retaliation" attached to his motion [140], the plaintiff has shed more light on his claims against other defendants in this case. He alleged that he did not receive due process on the June 5, 2008 disciplinary report regarding his refusal to submit to medical testing while on a hunger strike. He claims that on June 5, 2008, he filled out the witness form requesting the nurse, Van Horne as a witness. He claims that at the hearing of his disciplinary ticket, he would have asked her to advise the Adjustment Committee whether he was required to submit to a blood pressure check while on hunger strike. On June 11, 2008, the plaintiff appeared before the Adjustment Committee composed of the defendants, Chapin and Sanders to hear the June 5, 2008 disciplinary ticket. The plaintiff claims he pled not guilty and again requested Van Horne as a witness. He also claims he submitted a written statement stating he was not guilty and requested that Chapin and Sanders review the video surveillance. The plaintiff claims Chapin and Sanders falsified the final summary by indicating that the plaintiff

5

pled guilty and requested no witnesses. As punishment, the plaintiff received 15 days in segregation.

Looking back at the plaintiff's complaint, the court notes that the plaintiff also alleges that on June 11, 2008, he appeared before Chapin and Sanders for a hearing on the disciplinary ticket written by Defendant Unsworth. As noted above, the plaintiff claims that on June 3, 2008, Unsworth wrote a false and retaliatory disciplinary report. Plaintiff claims he was charged with: 1) assaulting any person; 2) damage or misuse of property; and 3) fighting. Ultimately, the plaintiff was found guilty of all three charges. Plaintiff claims Chapin and Sanders falsified the final summary report by indicating that the plaintiff requested no witnesses. As punishment, the plaintiff received three months C grade; three months in segregation and a disciplinary transfer. The plaintiff claims Chapin and Sanders punished him with a "retaliatory" transfer and they violated his right to due process. Transferring a prisoner to another prison in retaliation of exercising his constitutional right would be unconstitutional. *See for example, Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996)("If a prisoner is transferred for exercising his own right of access to the courts, or for assisting others in exercising their right of access, he has a claim under § 1983.") *See also Murphy v. Lane*, 833 F2d 106, 108 (7th Cir. 1987)(inmate stated claim for retaliatory transfer). The plaintiff does not state what constitutionally protected right he was exercising when he was punished with a "retaliatory" transfer. Therefore, the court finds that Chapin and Sanders' punishing the plaintiff with a disciplinary transfer was not motivated by the plaintiff's exercise of any constitutionally protected right. Therefore, his retaliation claim against Chapin and Sanders fails.

Prison disciplinary proceedings are not criminal proceedings, and do not require the same protections to the accused as criminal proceedings do. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Procedural due process in the prison disciplinary setting requires only: sufficient advance written notice of the charge; a hearing before an impartial decision maker; an opportunity to present a defense, including witnesses and documentary evidence, if consistent legitimate penological concerns; and, a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action. *Wolff*, 418 U.S. 529. In this case, the plaintiff received all of the requirements of *Wolff*, except he claims his right to a witnesses and viewing of a video surveillance tape was denied. The Constitution does not protect against all actions of prison officials, but only those that cause the plaintiff to suffer a deprivation of a constitutionally protected liberty, life or property interest. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995)(per curiam). Many of the penalties imposed after prison disciplinary hearings do not implicate due process interests. The only tangible deprivations the plaintiff suffered were 15 days in segregation for one discipline ticket and for the second disciplinary ticket, the plaintiff spent three months in segregation, a reduction in his grade and a transfer to another prison. Even if the plaintiff's allegations regarding his request for a witness and review of the video surveillance tapes are true, the plaintiff's deprivations do not amount to a deprivation of constitutionally protected interest. *See, e.g., Sandin v. Conner*, 515 U.S. 472 (1995)(segregation in prison does not implicate procedural due process). Disciplinary segregation itself does not necessarily implicate the due process clause, if "such segregation does not impose an 'atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life." Simply put, there is no liberty interest in avoiding segregation absent a showing of a significant deprivation atypical of prison life. The plaintiff has made no allegations regarding the conditions of his confinement while in segregation. *See also Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995)(Demotion in grade status does not implicate federal due process rights). Further, *see Thomas v. Ramos*, 130 F.3d 754, 760 (7th Cir. 1997)(prisoner has no liberty interest in remaining in general population or avoiding transfer to another prison). *See Whitford v. Boglino*, 63 F.3d 527, 533 n.7 (7th Cir. 1995)(Demotion in grade status does not implicate federal due process rights). The plaintiff has failed to state a claim that Chapin and Sanders violated his due process rights because he has no liberty interest in not being housed in segregation, a demotion of his grade or a transfer to another prison. The plaintiff has no other allegations against Chapin and Sanders, therefore, Chapin and Sanders are dismissed from this lawsuit pursuant to Fed. R. Civ. Pro. Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

The plaintiff may proceed on his claims of retaliation against the defendants, McLaughlin, Bryan, Unsworth and Price. Plaintiff is advised that if it is found after discovery and dipositive motion that he had no grounds for bringing retaliatory claims, the court can find that the claims were frivolous and/or malicious. He can then be subjected to 730 ILCS 5/3-6-3(d) which provides that "[i]f a lawsuit is filed by a prisoner in an Illinois or federal court against the State, the Department of Corrections, or the Prisoner Review Board, or against any of their officers or employees, and the court makes a specific finding that a pleading, motion, or other paper filed by the prisoner is frivolous or malicious, the Department of Corrections shall conduct a hearing to revoke up to 180 days of good conduct credit by bringing charges against the prisoner sought to be deprived of the good conduct credits before the Prisoner Review Board as provided in subparagraph (a)(8) of Section 3-3-2 of this Code.

It is therefore ordered:

1: The plaintiff may proceed on his retaliation claims against McLaughin, Bryan, Unsworth and Price.

2. The plaintiff's retaliation claim against Defendant Hall fails to state a claim upon which relief may be granted. As the plaintiff has made no other allegations against Hall, pursuant to Fed. R. Civ. Pro. Rule 12(b)(6), Hall is dismissed as a defendant in this lawsuit. The clerk of the court is directed to terminate Hall as a defendant, forthwith.

3. The plaintiff may not proceed on a claim of retaliation against Steele. See the court's December 7, 2010 order denying plaintiff's motion to amend his complaint to add a claim of retaliation against Steele.

4. The plaintiff fails to state a claim of violation of his due process against Chapin and

| | |
|---|---|
| | Sanders.  Further, the plaintiff fails to state a claim of retaliation against Chapin and Sanders.  As the plaintiff has no other allegations against Chapin and Sanders, pursuant to Fed. R. Civ. Rule Civ. Pro. Rule 12(b)(6), Chapin and Sanders are terminated as defendants in this lawsuit.  The clerk of the court is directed to terminate Chapin and Sanders as defendants, forthwith. |
| 5. | The parties are allowed an additional 45 days of discovery on the retaliation claims.  Written requests for discovery must be served on a party at least 30 days before the discovery deadline.  Any further dispositive motions must be filed on or before March 31, 2011.  The plaintiff is forewarned that failure to cooperate with discovery will lead to a dismissal of his entire lawsuit.  A status conference is scheduled for Thursday, June 23, 2011 at 9:00 a.m., via telephone conference. |

Enter this 6th day of December 2010.


/s./ Joe B. McDade
_____
Joe Billy McDade
Senior United States District Judge